(No. 5244

WILLIAM BURKE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 18, 1972.*

RUSSELL J. GOLDMAN, JOHN R. SNIVELY, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This is a claim for severe injuries sustained by the claimant when he was an inmate at Menard Penitentiary. The complaint, stated in three separate counts, contends that claimant's injuries were caused by respondent's negligence; a violation of the Structural Work Act; and by respondent's failure to provide claimant with timely and proper medical care and treatment after he was injured.

Claimant, in his testimony, gave a detailed account of the circumstances and events before and after his injury which have a bearing on his claim. Respondent offered no rebuttal testimony but challenges the conclusions as to liability that may be drawn from claimant's statement of the facts.

Claimant was a bricklayer by trade and had followed that occupation for over 17 years prior to his incarceration. On October 22, 1963, while an inmate at Menard, claimant was ordered by the respondent to do certain tuck pointing and masonry work on the penitentiary wall. The wall was approximately 22 feet high. Although claimant had asked the officers in charge for a swinging scaffold, he was required to work on a plank suspended between two 20 ft. wooden ladders with inserted brackets to support the platform plank. Claimant described the wooden ladders as having been repaired with wire and protested to the guards that he did not believe they were safe. He again asked for a swinging scaffold which he said would go up fast and be safer for the workers. In claimant's unrefuted testimony he quoted Sgt. Kisro, one of the guards, as saying that the ladders were in; that claimant would have to use them and ordered him to do so.

While claimant was engaged in the directed work, another prisoner who was assigned to the same task came up one of the ladders and stepped onto the plank. As he did so, the supporting brackets gave way, causing the plank to

tilt and the claimant to fall to the ground. Claimant suffered a compound fracture of the left leg. He saw the bone sticking out about three inches above the ankle.

Claimant's unrefuted account of the medical care and treatment he received shortly after his fall, and for a long period of time thereafter, paints a vivid picture of intense pain and suffering.

Immediately after the accident, claimant lay on the ground for a short period of time before he was finally administered a shot requested for him by a Catholic priest. About 10 minutes later, he was removed on a stretcher to the prison hospital. There his leg was set by Dr. Wham and placed in a cast. No anesthesia was administered.

The leg became swollen and he ran a high temperature. When the leg became very discolored, the cast was cut off, the leg was opened and drained without benefit of anesthesia.

For several months, the condition of his leg did not improve. It was constantly draining. Three or four months after the original accident another doctor was called in for consultation. Claimant had requested an orthopedic surgeon shortly after the accident, but none was provided until after he was transferred to Stateville. There Dr. Duffy, an orthopedic surgeon from Joliet, was brought in to see him on April 23, 1964. One week later Dr. Duffy performed an operation on the leg, scraped and cleaned the bone, and put in a hose to keep it draining. There was further surgical procedure in November of 1964 when Dr. Duffy performed a bone graft and put in a pin or a rod in the claimant's leg.

In March of 1965, after claimant was paroled, he was transferred to Hines Hospital where he stayed for approximately three and one half to four weeks. From Hines he was transferred to Rockford Memorial Hospital where

Dr. Sam Behr took over. Dr. Behr removed the cast which extended from the left hip down to the toes. The leg was still troubling the claimant, emitting a strong odor, and started swelling again. After several months of therapy treatment, Dr. Behr performed a final operation and removed the pins in August of 1965.

Respondent, in a well presented brief, has analyzed claimant's testimony and bases its conclusion, that liability should be denied, on four theories:

1. Respondent did not know and, in the exercise of reasonable care, could not have known that the rungs would pull out from the ladder at the time in question.

2. Respondent was not guilty of a "willful" violation of the Structural Work Act.

3. Respondent exercised reasonable care in providing medical treatment for claimant's injuries.

4. Claimant did not carry his duty of proof by the preponderance of the evidence.

The Court finds that the facts do not support respondent's first theory. It need not have been foreseeable that "the rungs would pull out from the ladder at the time in question". We hold that, if the respondent had exercised reasonable care for claimant's safety, it could have determined that the ladders used were unsafe as claimant had warned, particularly for two men, a plank, and the weight of the working materials. Claimant was a man with long experience in the type of work he was required to do for the respondent, knew the dangers and hazards of such work, and the type of equipment needed to protect the workman. Yet respondent did not heed claimant's professional opinion and warning that the ladders were not safe and refused his request for a scaffold which he deemed proper. In the absence of any contradictory evidence, we

also accept claimant's statement that Captain Fry, a prison employee, admitted to the claimant that the ladders had been condemned and should not have been used.

We find that the facts in this case support a finding of actionable negligence by the respondent.

The record also clearly shows that claimant could not be found guilty of any contributory negligence. The defenses of assumption of risk and contributory negligence are often properly available to the respondent in actions brought by a convict, but certainly not under the facts in this case. The rule is well stated in *Moore* vs. *State*, 21 C.C.R. 282, p. 290:

"Claimant, as a convict, was required to take orders, and carry them out. To refuse to do so would subject him to disciplinary action, and the forfeiture of his limited privileges, including prompt consideration for parole. Thus, he did not occupy a position of independence, which a person outside a penitentiary occupies. His choice of action being limited, he, therefore, kept silent and did as he was ordered. In fact, he did not possess, under the circumstances in this case, the freedom of choice inherent in the doctrines of assumed risk and contributory negligence."

Respondent undertakes to distinguish *Moore* from the case at bar. The facts are different, but the rules of law stated in *Moore* are applicable here.

Having determined that claimant is entitled to an award for his injuries, we need not discuss the conflicting arguments presented by the parties concerning the Structural Work Act. Nor do we need to elaborate on the question as to whether respondent exercised reasonable care in providing medical treatment for claimant's injuries. Suffice it to say that claimant's injuries are serious and permanent, according to the testimony of Dr. Behr. The appearance of claimant's leg, which the Court saw when he appeared before us on his crutches, left no doubt in our mind as to the accuracy of Dr. Behr's conclusion and prognosis.

Dr. Behr stated that claimant has permanently lost ap-

proximately 50% of the use of his left leg and can do no work that requires the use of that leg. He can walk with the use of crutches but can no longer work at his former trade of bricklayer and stone mason. Claimant was 36 years' old, bodily sound, and in good health at the time he sustained his permanent injuries.

Claimant is hereby awarded damages in the amount of $25,000.00.